**RECORD HEAD CORPORATION,**
Plaintiff-Appellee,

v.

**Michael SACHEN, et al.,**
**Defendants-Appellants.**

No. 80–2518.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1981.

Decided July 7, 1982.

Curt R. Meitz, West Allis, Wis., for defendants-appellants.

Paul E. Sicula, Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and EAST, Senior District Judge.*

CUMMINGS, Chief Judge.

In this action for declaratory and injunctive relief Record Head Corporation challenged as facially unconstitutional a West Allis, Wisconsin, drug paraphernalia ordinance. Judge Evans found the statute unconstitutional on vagueness and equal protection grounds; he therefore enjoined its application. The defendants, who are West Allis' attorney, police chief, and aldermen, appealed. We heard oral argument on June 8, 1981, but postponed decision until the Supreme Court decided *Village of Hoffman Estates v. Flipside,* —— U.S. ——, 102 S.Ct.

---

* The Honorable William G. East, Senior District Judge for the District of Oregon, is sitting by designation.

1186, 71 L.Ed.2d 362 (1982). There the Supreme Court reversed this Court's determination (639 F.2d 373 (7th Cir. 1980)) that the Hoffman Estates, Illinois, drug paraphernalia ordinance, cast in terms of a licensing statute, was unconstitutionally vague. The parties in the instant litigation have, at this Court's request, filed additional memoranda discussing the effect of *Hoffman Estates* on this case. We now affirm the judgment of the district court, 498 F.Supp. 88, in part, reverse in part, and remand for further proceedings.

Drug paraphernalia statutes come in three basic varieties: licensing statutes, statutes focusing on drug paraphernalia and minors, and blanket prohibitions on sales. *Hoffman Estates* involved the first type; this case deals with the second, and its companion case, *Levas and Levas d/b/a Levas T-Shirts v. Village of Antioch*, 684 F.2d 446, also decided today, deals with the third. It is clear that the opinion in *Hoffman Estates* establishes a method—though it does not necessarily dictate a result—for judging the facial constitutionality of all such ordinances.[1]

■ The first question to ask is whether the ordinance, construed to give full effect to any ambiguities, reaches "a substantial amount of constitutionally protected conduct." —— U.S. at ——, n.6, 102 S.Ct. at 1191, n.6. Typically, the only constitutional right even tangentially involved is freedom of speech. It is important to distinguish between commercial and noncommercial speech, however, because the overbreadth doctrine, which allows the challenger to assert the free-speech rights of others, does not apply to commercial speech. *Id.* at ——, 102 S.Ct. at 1192, citing *Central Hudson Gas & Electric Co. v. Public Service Comm'n*, 447 U.S. 557, 565, n.8, 100 S.Ct. 2343, 2351, n.8, 65 L.Ed.2d 341.

■ Next, is the law "impermissibly vague in all its applications?" *Id.* at ——, 102 S.Ct. at 1192. A vague statute is constitutionally objectionable for two reasons: it fails to provide the public with fair notice of the line between lawful and unlawful conduct; and it allows fundamentally legislative decisions to be made on a subjective basis at the point of enforcement rather than enactment. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222. The tests for vagueness are not capable of mechanistic application. For example, economic regulation may be less precise than other forms of legislation because the entities affected by it are more apt to know what lines are drawn and more able to clarify uncertainties through inquiry or administrative proceedings. —— U.S. at —— —— ——, 102 S.Ct. at 1192. Civil legislation can be vaguer than criminal laws because "the consequences of imprecision are qualitatively less severe." *Id.* at ——, 102 S.Ct. at 1193. An intent requirement may mitigate vagueness problems, especially where the statutory defects involve notice more than arbitrary enforcement. *Id.* Finally vagueness is tested by more exacting standards when constitutionally protected rights are threatened—in such circumstances vagueness and overbreadth analysis are cognate.

■ *Hoffman Estates* also suggests that claims of due process problems (other than vagueness) or equal protection violations are not likely to succeed in a pre-enforcement challenge. In general, unless there is a fundamental right or suspect classification—or a pattern of enforcement that belies the apparent absence of either—legislation passes muster if it survives the relatively relaxed scrutiny of the "rational basis" test. No fundamental rights or suspect classifications are implicated by the

---

1. Because the Supreme Court's *Hoffman Estates* case fundamentally restructures the analysis of such ordinances, it is not particularly helpful to have a "laundry list" of earlier Courts of Appeals opinions. We have found no prior cases construing drug paraphernalia ordinances in exactly the *Hoffman Estates* manner. The closest analogue, though it is framed as a standing decision, is *Brache v. County of Westchester*, 658 F.2d 47 (2d Cir. 1981), certiorari denied, —— U.S. ——, 102 S.Ct. 1643, 71 L.Ed.2d 874. There is no indication in the instant case that a core prohibition can be discerned, or that plaintiffs have violated it and thereby lost standing to bring a facial challenge.

terms of drug paraphernalia legislation, and the actual pattern of enforcement does not become relevant until there is a challenge to the legislation as applied. *Id.* at ——, n.9, 102 S.Ct. at 1192 n.9; ——, n.21, 102 S.Ct. at 1196, n.21. Nor is the specter of Fourth Amendment problems likely to influence the outcome of a facial challenge: until there is some concrete threat, there is no way of telling how serious the problems may be. *Id.* at ——, n.22, 102 S.Ct. at 1192, n.22.

We turn now to the task of analyzing the West Allis ordinance by using the techniques the Supreme Court applied in *Hoffman Estates.*

## I. *The West Allis and Hoffman Estates Ordinances Compared*

The West Allis ordinance (reprinted in the Appendix) is drafted as a criminal statute,[2] which bans sales, offers to sell, dispensing, gifts, and displays of drug-related "instruments." [3] The ban is absolute on premises within 1,000 feet of a school; otherwise drug paraphernalia may be purveyed only in parts of premises which are not open to view by minors or to which minors are not admitted unless accompanied by a parent or guardian. Violation of the ordinance results in fines of $500 to $1,000 and costs of prosecution; a violator who cannot pay must serve a term not to exceed 90 days in the county jail.

The Hoffman Estates ordinance (set out in the Appendix to the Supreme Court's decision, —— U.S. at ——, 102 S.Ct. at

1194) imposes a flat ban on sales of drug paraphernalia to minors,[4] but its main thrust is to require that retailers who sell "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by Illinois Revised Statutes," obtain a license, at a cost of $150 annually, and keep detailed records of purchasers' identities. The penalty provision, applicable both to sales to minors and to failure to have the required license or keep proper records, calls for $10 to $500 fines, and each unlicensed day is a separate violation.

## II. *The Ordinance and Freedom of Speech*

■■■ The district judge did not rest his decision in this case on possible interference with freedom of speech, and *Hoffman Estates* makes clear that such a basis for decision could not stand. Nothing in either ordinance directly infringes the plaintiffs' noncommercial speech—actual or symbolic—or chills the noncommercial speech rights of others. The Hoffman Estates ordinance did regulate the placement of certain literature and labeled items in shop displays, but the Supreme Court treated the regulation as having no impact on noncommercial speech. —— U.S. at ——, 102 S.Ct. at 1192. The West Allis ordinance has no such provision. The West Allis ordinance does use advertising—national, local, and by the person or business against whom enforcement is sought—as an indication of

---

**2.** The defendants-appellants have treated it as a civil enactment, pointing to Wis.Stat.Ann. 66.-12. Brief on the effect of *Hoffman Estates* 2. Under Wisconsin law, municipalities cannot create crimes—that prerogative is reserved to the state. *State* ex rel. *Prentice v. County Court, Milwaukee County,* 70 Wis.2d 230, 234 N.W.2d 283 (1975); *City of Milwaukee v. Stanki,* 262 Wis. 607, 55 N.W.2d 916 (1952). We do not regard the necessarily civil nature of municipal law enforcement (the main consequences of which are a lowered burden of proof for the municipality, the availability of appeal by either side, and a 90–day maximum for imprisonment) as determinative in classifying an ordinance for vagueness analysis.

**3.** The West Allis ordinance also bans transfers of simulated controlled substances and simulat-

ed drugs. These provisions have not been challenged in the district court or before this Court, but we assume that they present no constitutional difficulties. Simulated controlled substances are defined with reference to a Wisconsin statute; simulated drugs are defined in terms of various federal pharmacopeias and language borrowed from traditional food and drug regulation. See Part VI *infra.*

**4.** As is the case with the West Allis ordinance, the challenge to the Hoffman Estates ordinance focused on the drug paraphernalia aspects rather than on any of the ordinance's other provisions (in this case the protection of minors).

whether a particular "instrument" is "designed for use or intended for use" with drugs.[5] But advertising is commercial speech: Record Head Corporation alleges no interference with its own advertising and cannot prevail on a theory that other advertisers may be chilled. *Id.* at ——, 102 S.Ct. at 1192.

## III. *The Rigor of the Vagueness Test*

■ As the Supreme Court has cautioned, the tests for vagueness are not mechanical exercises. A criminal ordinance like West Allis' is more closely examined than a civil one, because criminal penalties are more severe. The Supreme Court apparently viewed the Hoffman Estates ordinance as at least quasi-criminal, —— U.S. at ——, n.16, 102 S.Ct. at 1194, n.16. Vagueness is less tolerable in an ordinance of general applicability—West Allis' reaches noncommercial transactions by individuals as well as retail sales—than in economic regulation, which is directed at people who are assumed to have some expertise and some ability to demand clarification.[6] The Supreme Court clearly treated the Hoffman Estates ordinance as pure business regulation. *Id.* at ——, 102 S.Ct. at 1193. Impingement on a protected constitutional right will trigger greater scrutiny, but neither the West Allis nor the Hoffman Estates ordinance implicates freedom of speech, and no other constitutionally protected conduct is even arguably involved. The net result of this catalog is that, as criminal legislation not restricted to economic or business activity, the West Allis ordinance deserves a somewhat more searching examination than the Hoffman Estates provisions required.

## IV. *The Vagueness Test Applied*

■ The difficulty that has plagued draftsmen of drug paraphernalia ordinances is how to control traffic in drug-related equipment without also proscribing wholly innocent conduct. Mirrors, spoons, pipes, and cigarette papers are all multiple-purpose items. A statute that has no ambiguities will reach only the most obvious items of drug paraphernalia, while a statute that casts a broader net may be too vague. Here both the paradigm Hoffman Estates ordinance, and the West Allis ordinance that we must measure by the Supreme Court's yardstick, have sought to limit vagueness problems by easing the sanctions imposed (Hoffman Estates' licensing fee) or limiting the scope of the prohibition (West Allis' willingness to countenance sales or other transfers away from schools and to adults). These legislative strategies do not really solve the problem. To be constitutionally defective an enactment must be vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, quoted in *Hoffman Estates*, —— U.S. at ——, n.7, 102 S.Ct. at 1191, n.7. If the Hoffman Estates ordinance had been, or the West Allis ordinance is, vague in that sense, it makes no difference that the inscrutable conduct is punished mildly or punished only under certain conditions.[7] Accordingly, in what follows our attention will be focused on the parts of the West Allis ordinance where the vagueness problems inhere.

5. West Allis construes the advertising factor as equivalent to the Hoffman Estates placement regulation. Br. 16–17. So construed, it does not offend First Amendment interests any more than the Hoffman Estates regulation did.

6. The dissent argues that the West Allis ordinance is classifiable as economic regulation too, because it reaches only violations that occur on or near "premises" (*i.e.*, business establishments and their immediate vicinity). It treats as fanciful our concern that transactions

other than the garden-variety head-shop sale might be illegal.

7. Thus the presence of vagueness in the sense demanded by *Coates* would distinguish West Allis' ordinance from, *e.g.*, bans on the sale of cigarettes or liquor to minors, or such crimes as statutory rape or indecent liberties with a child. In all those cases, there is both a "comprehensive normative standard" and a protective purpose. Protective purpose alone is not enough.

## A. Fair Notice

█ In *Hoffman Estates*, the Supreme Court construed the phrase "designed or marketed for use" in a way that minimized vagueness. "Designed for use" referred, the Court said, to the objective characteristics of an item as manufactured, not to the intent—or possible adaptive ingenuity—of the retailer or his customers. *Id.* at ——, 102 S.Ct. at 1193. "Marketed for use," on the other hand, referred to a "retailer's intentional display and marketing of merchandise * * * in a manner that appeals to or encourages illegal drug use," thus stating a scienter requirement. *Id.* at ——, 102 S.Ct. at 1194. Under the Court's construction then, the statute reaches only two forms of conduct: the sale of objects manufactured as drug paraphernalia, and the sale of other, more ambiguous implements if they are deliberately displayed to encourage drug use. Thus construed, the ordinance gives adequate notice of what it prohibits.

The West Allis ordinance uses different language. Its prohibitions attach to "instruments," which are defined as "devices designed for use or intended for use in ingesting, smoking, administering, or preparing any controlled substance." We may assume for argument's sake, although the ordinance is silent on this point, that "designed for use" has the same meaning here as in the Hoffman Estates ordinance: that the instrument must have definite design characteristics, rather than adaptive possibilities, that suit it for use with drugs. For the phrase "intended for use" the ordinance tells us that the intent of the transferor (seller, giver, displayer, dispenser), rather than the intent of the transferee, is important. This gloss is less precise than "marketed for use," which the Supreme Court has read to refer to the deliberate marketing strategies of retailers; but the broader term is an inevitable consequence of West Allis' attempt to reach more than retail sales.

In place of the scienter requirement, the West Allis ordinance enumerates various factors to be considered in deciding what is an instrument:

(i) Whether a person or business establishment is a licensed distributor or dealer of tobacco products under Chapter 139 of the Wisconsin statutes.

(ii) Expert opinion as to the principal use of the devices, articles, or contrivances claimed to be instruments.

(iii) The total business of a person or business establishment and the types of devices, articles, contrivances, or items involved in the business.

(iv) National and local advertising concerning the use of devices, articles or contrivances claimed to be instruments.

(v) Advertising concerning the nature of the business establishment.

The defendants-appellants have urged that these factors ameliorate vagueness that might otherwise inhere in the "intended for use" language. Br. 15.[8]

Far from curing vagueness, these factors seem to us to exacerbate it. None of the factors helps to define the intent of the noncommercial purveyor; only (i), (iii), and (v) have any conceivable relevance to the intent of the seller; (iv) might illuminate the "designed for use" aspect, but only if manufacturers are expected to advertise the illegal properties of their products; and (ii) seems capable of overriding any inferences that might be drawn from (i), (iii), (iv), or (v). These factors, which are both general and unweighted, invite inquiry into areas of doubtful relevance rather than make the prohibited conduct any clearer.

## B. Arbitrary Enforcement

The possibility of arbitrary enforcement did not detain the Court long in *Hoffman Estates*, but nothing in that opinion shows that the Justices intended any departure from *Grayned*'s treatment of fair notice and

---

**8.** In their Brief on the effect of *Hoffman Estates* 3, defendants-appellants have gone a step further, arguing that these factors are "substantially equivalent" to the Hoffman Estates "marketed for use" language, as construed by the Court. We cannot see that they invite any such specific and limited interpretation.

arbitrary enforcement as co-equal dangers. The Court characterized the Hoffman Estates ordinance as "a business regulation," —— U.S. at ——, 102 S.Ct. at 1194, and that characterization does not describe West Allis' enactment. It also assumed that retailers would seek and the village would supply "administrative regulations that will sufficiently narrow potentially vague or arbitrary interpretations of the ordinance. *In economic regulation especially,* such administrative regulation will often suffice to clarify a standard with an otherwise uncertain scope." *Id.* (emphasis added). No such assumption is warranted here. Finally, the Court viewed enforcement problems as less serious because the Village of Hoffman Estates had an avowed intention to enforce primarily the "marketing" aspect of its ordinance, which the Court found more definite than the "item-by-item analysis of whether paraphernalia are 'designed for' illegal drug use." *Id.* But if "marketed for use" is the strong point of the Hoffman Estates ordinance, its analogue "intended for use" is, as indicated above, the weak point of the West Allis ordinance. The factors that define an instrument and by inference show intent are fuzzy, contradictory, and dangerously open to erratic and after-the-fact interpretation.

Accordingly, the possibility of arbitrary enforcement is a more serious problem here than it was in *Hoffman Estates.* By arbitrary enforcement, we do not mean isolated cases of possibly unjust enforcement, because the Court has indicated that challenges to the statute as applied are ordinarily an adequate protection against such problems. *Id.* at ——, n.21, 102 S.Ct. at 1196, n.21. We mean rather enforcement that leaves to the arresting or prosecuting authorities the job of determining, essentially without legislative guidance, what the prohibited offense is. The vice of such enforcement is two-fold. First, it undermines the sense a citizen body must have, if it is to respect a system of law, that the law is the same for any offender. Second, it en-

courages legislators to evade difficult decisions that would otherwise subject them to political pressures and accountability. Cf. *Grayned, supra,* 408 U.S. at 108–109 and n.5, 92 S.Ct. at 2299 and n.5; John Hart Ely, *Democracy and Distrust* 177 (1980).

Both dangers are implicated in the West Allis ordinance. Some of the factors on which it depends for definition are of doubtful relevance (the license to distribute or sell tobacco products) or completely irrelevant (national or local advertising by persons other than ones against whom enforcement is sought). Others just shift the uncertainty from one area to another—for example, advertising concerning the nature of the particular business establishment, or "the total business of the person or business establishment and the types of devices, articles, contrivances or items involved in the business." Finally, the reliance on expert opinion about the "principal use of devices, articles, or contrivances claimed to be instruments," presumably elicited at the prosecution stage,[9] impermissibly allows "the legislature [to] set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large." *United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563, quoted in *Papachristou v. City of Jacksonville,* 405 U.S. 156, 165, 92 S.Ct. 839, 845, 31 L.Ed.2d 110.

In the final analysis, the drug paraphernalia ordinance enacted by West Allis, unlike the Hoffman Estates ordinance, satisfies neither the fair notice nor the consistent enforcement branches of the test for unconstitutional vagueness. The district judge so found, and we concur.

## V. *Equal Protection Problems*

 The district judge also found the statute violative of the Equal Protection Clause. He thought that factors (i) (the tobacconist's license) and (iii) (the total business of the person or establishment) set up an irrational distinction between head

9. All five factors are to be "mandatorily considered by the *trier of fact*" to see whether the prosecution has met its burden of proving the

seller's intent. West Allis Reply Br. 7 (emphasis added). On the prosecution's burden of proof, see note 2 *supra.*

shops and other enterprises. He also thought that the second factor, expert opinion, drew an illogical line between businesses or people who could afford to solicit expert opinion and those who could not. While these factors are not precise, they do not fail a "rational basis" test. As the Supreme Court has said,

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.
>
> *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (*per curiam*)

The city of West Allis of course has a legitimate interest in stemming the tide of drug abuse, which adversely affects the public health, safety, morals and general welfare. *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. Moreover, in deciding what means to employ, its legislating body can rely on actual or hypothetical facts, and can attack only certain aspects of a problem without having to justify its failure to fashion a comprehensive solution. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–489, 75 S.Ct. 461, 464, 99 L.Ed. 563. As Justice Douglas there remarked, "[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.* at 487–488, 75 S.Ct. at 464. Under these relaxed criteria, we cannot substitute our judgment for the West Allis city council's, especially in a challenge to the ordinance on its face rather than as applied.

### VI. *Final Disposition*

While the West Allis ordinance is, we hold, unconstitutionally vague in its drug paraphernalia provisions, its similar ban on transfers of simulated controlled substances and simulated drugs (likewise limited to transfers to minors or within 1,000 feet of a school) has not been challenged, either in the district court or here. The ordinance contains a severability provision, which the district judge declined to apply: he found that "the statutory scheme is so intertwined that severance is difficult and * * * the heart of the prohibition is aimed at 'instruments.'" A drug paraphernalia ordinance can avoid constitutional problems, as the Hoffman Estates ordinance did, and as we today hold that the Village of Antioch's version of the Model Act also does, *Levas and Levas, supra*, at 455. Therefore the city of West Allis should have an opportunity to express its preference: would it rather retain the sound provisions of this statute and deal separately with the paraphernalia problems, or would it prefer to begin again with a more specifically drawn ordinance covering both paraphernalia and simulated drugs? The case is remanded to the district court, so that the severability issue can be addressed after hearing from counsel for the parties.

The district court's decision that the ordinance is unconstitutionally vague is affirmed; its decision that the ordinance violates the Equal Protection Clause is reversed; and the case is remanded for a severability determination. Costs to appellees.

### APPENDIX

AN ORDINANCE TO CREATE SECTION 6.026 OF THE REVISED MUNICIPAL CODE RELATING TO THE REGULATION OF DISPLAY AND SALE OF INSTRUMENTS USED FOR INHALING OR INGESTING CONTROLLED SUBSTANCES

The Common Council of the City of West Allis do ordain as follows:

PART I. Section 6.026 of the West Allis Revised Municipal Code is hereby created to read as follows:

6.026 REGULATION OF DISPLAY AND SALE OF INSTRUMENTS USED FOR INHALING OR INGESTING CONTROLL[E]D SUBSTANCES

**(1) Intent.**

It is determined by the Common Council that the open display and availability for sale of simulated controlled substances and instruments used for inhaling or ingesting controlled substances in places of business within the City suggests and encourages the illegal use of drugs and other controlled substances by the youth of this community; that to protect the health and safety and general welfare of the youth of this community it is necessary that the regulations herein provided be enacted.

**(2) Definitions** as used in this section:

(a) "Close Proximity" means within 1,000 feet on a straight line commencing at the property lines nearest to each other.

(b) "Controlled Substance" means any drugs, substance or immediate precursor enumerated in Schedules I through V of the Uniform Controlled Substances Act found in Chapter 161 of the Wisconsin Statutes, and as such Schedules may from time to time, be amended.

(c) "Drug" means:

(i) Substances recognized as drugs in the Official United States Pharmacopoeia, Official Homeopathic Pharmacopoeia of the United States or Official National Formulary or any supplementary to any of them.

(ii) Substances intended for use in the diagnosis, cure, medication, treatment or prevention of disease in man or animals.

(iii) Substances (other than food) intended to affect the structure of any function of the body of man or animals.

(iv) Substances intended for use as a component of any article specified in Clauses (i), (ii), (iii) of this Subsection.

(d) "Instrument" means a device designed for use or intended for use in ingesting, smoking, administering or preparing any controlled substance.

For the purpose of this subsection the phrase "Intended for Use" shall refer to the intent of the person selling, offering to sell, dispensing, giving away or displaying the instrument herein defined. In determining whether an item constitutes an "instrument" the following factors are to be considered:

(i) Whether a person or business establishment is a licensed distributor or dealer of tobacco products under Chapter 139 of the Wisconsin Statutes.

(ii) Expert opinion as [to] the principal use of the devices, articles or contrivances claimed to be instruments.

(iii) The total business of a person or business establishment and the types of devices, articles, contrivances or items involved in the business.

(iv) National and local advertising concerning the use of devices, articles or contrivances claimed to be instruments.

(v) Advertising concerning the nature of the business establishment.

(e) "Manufacture" shall have the same meaning as given to it by Section 161.01(13), Wis.Stats.

(f) "Patient" means the individual for whom a drug is prescribed or for whom a drug is administered; or the owner or the agent of the owner of the animal for which a drug is prescribed or to which a drug is administered; provided that the prescribing or administering referred to in this subsection is in good faith and in the course of professional practice only.

(g) "Person" means any individual, corporation, business trust, estate, partnership or association or any other legal entity.

(h) "Pract[it]ioner" shall have the same meaning as given to it by Section 161.01(19) of the Wisconsin Statutes.

(i) "Pharmacist" shall have the same meaning as given to it by Section 450.07(3) of the Wisconsin Statutes.

(j) "Prescription" means a written order (or an oral order later reduced to writing) by a pract[it]ioner for a prescription drug for a particular patient which specifies the date of its issue, the name and address of such pract[it]ioner, the name and address of the patient and the name and quantity of the prescription drug prescribed, directions for use of the drug, and in case of a written order, the signature of the pract[it]ioner.

(k) "Minor" means any person who has not attained the age of eighteen years of age.

(*l*) "Premises open to minors" means any business establishment which sells its wares or merchandise to minors or which permits minors to enter into its place of business.

(m) "Place of display" means any museum or library or school or other similar public place upon which business is not transacted for a profit.

(n) "School" means any public or private elementary, junior high or high school.

(*o*) "Premises" means a business establishment and a structure of which it is a part and facility and appurtenances therein and grounds, areas and facilities held out for the use of patrons.

(p) "Simulated Drugs" and "Simulated Controlled Substances" are any products which identify themselves by using a common name and slang term associated with the controlled substance or indicate by label or accompanying promotion material that the product simulates the effect of a controlled substance or drug.

(q) "Wholesaler" shall have the same meaning as given to it by Section 450.-07(3)(h) of the Wisconsin Statutes.

(3) Sale and Display of Instruments and Simulated Controlled Substances Prohibited.

(a) It shall be unlawful for any person, firm or corporation to sell, offer to sell, dispense, give away or display [a]ny instrument, [simulated controlled substance or] simulated drug in or upon any premises which:

(i) Are premises open to minors, unless the instruments, simulated controlled substances or simulated drugs are kept in such part of the premises that is not open to view by minors or to which minors do not have access, unless accompanied by a parent or legal guardian.

(ii) Are premises in close proximity to a school.

(b) Prohibition in this section shall not apply to:

(1) The display of any such items as a place of display for education or scientific purposes;

(2) Manufacturers, wholesalers, pharmacists, pract[it]ioners engaged in the normal, lawful course of their respective business or professions, nor to warehousemen or their employees engaged in the lawful transportation of simulated controlled substances or instruments nor to public officers or employees while engaged in the performance of their official duties.

(c) Penalty.

Any person violating this section shall forfeit not less than five hundred ($500) dollars nor more than one thousand ($1,000) dollars together with the costs of prosecution and in default of payment thereof shall be imprisoned in the County Jail or the House of Correction of Milwaukee County until such fines and costs are paid. Such imprisonment shall not exceed ninety (90) days.

(4) Severability.

If any of the provisions of this Section or the application thereof to any person or circumstances [are] held * * * invalid, the invalidity does not affect other provisions or applications of this Section which can be given affect (*sic*) without the invalid provision or application, and to this end the provisions of this Section are severable.

PART II. All ordinances or parts of ordinances contravening the provisions of this ordinance are hereby repealed.

PART III. This ordinance shall take effect and be in force from and after its passage and publication.

PASSED ——————, 1980
_____
City Clerk
APPROVED ———————, 1980
_____
Mayor

PELL, Circuit Judge, dissenting.

In *Village of Hoffman Estates v. Flipside*, —— U.S. ——, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Court seemed to put to rest the idea that municipalities could

not, in an endeavor to retard the growing menace of drug abuse, legislate against the activities of the so-called head shops without running afoul of Constitutional prohibitions. The majority opinion in a scholarly analysis arrived at the conclusion that the West Allis ordinance is without the protective ambit of *Hoffman Estates*. I cannot agree with that conclusion and respectfully dissent.

Semantic and factual distinctions can be drawn between the ordinance before the Supreme Court and that with which we presently are concerned. These strike me, however, as being matters of form rather than substance and, indeed, again with respect, the majority opinion appears to be straining unduly to distinguish *Hoffman Estates*. The majority opinion holds that the West Allis ordinance facially is unconstitutionally vague. The Supreme Court in *Hoffman Estates* in a unanimous opinion held that the ordinance there was not facially vague or overbroad. The Court's opinion is not a lengthy one but the sweep of its language appears to me to apply equally to the ordinance here under review.

The West Allis ordinance appears to me, on a fair reading, to be a sensible and pragmatic approach, within constitutional limitations, to coping with one phase of a problem which the majority correctly characterizes as adversely affecting "the public health, safety, morals and general welfare." It is not a complex ordinance or one which should leave a possible violator in any bonafide doubt as to his status with relation to it. Its primary thrust is against distributing devices "designed for use" [1] or "intended for use" in connection with illegal drugs. Its operating impact is confined to "premises" which, in essence, is defined in that ordinance as a business establishment held out for the use of patrons.

The majority opinion observes that the West Allis ordinance, being criminal rather than civil, must be closely examined. The Supreme Court, however, in *Hoffman Estates* indicated in examining the ordinance before it that a relatively strict vagueness standard would be applied because of its being concededly quasi-criminal. 102 S.Ct. at 1194. Upon that basis the Court found the ordinance sufficiently clear. The same result, in my opinion, is necessary here.

The majority opinion, however, would require us to give the present ordinance "a somewhat more searching examination" because it is "criminal legislation not restricted to economic or business activity." I wholly fail to understand the basis of the latter part of this characterization. As I have already, in effect, pointed out the prohibited activities are not those which are indulged in at social gatherings in a home or at picnics in the park but are those which occur on business premises. It is true that the ordinance by its terms is applicable to flesh and blood individuals as well as to various artificial legal entities. This simply means, as I see it, that the ordinance applies to the sales clerk as well as the corporate employer. In other words, the agent as well as the principal may be charged with the violation, one on the ground of actual participation and the other because of respondeat superior.

The only other justification of a non-economic characterization that I can discern is that the unlawful activity of distribution includes "the give away" of devices "intended for use" in connection with controlled substances. I regard it as extremely speculative that a business establishment is likely to engage in any extensive give away for-free of paraphernalia of a type contemplated by the ordinance, even cigarette roll-

---

1. The majority opinion understandably devotes little attention to the phrase "designed for use" as this precise phrase was involved in the Hoffman Estates ordinance. The Supreme Court had little difficulty in disposing of this phraseology as creating improper vagueness. It might seem in view of the Supreme Court holding that this would end the present inquiry in that the plaintiff has been unable to "demon-strate that the law is impermissibly vague in all of its applications." 102 S.Ct. at 1193. Nevertheless, I will direct my attention in this dissent, as the majority opinion does, to an examination of whether the language "intended for use" creates an impermissibly vague situation invalidating the ordinance *in toto*, notwithstanding that it includes the phrase "designed for use."

ing papers, except for bait purpose of inducing prospective buyers to come on the premises. In the unlikely event of a protracted "give away" program occurring and the benevolent or quasi-eleemosynary donor is prosecuted, then it will be time to face this issue on a challenge to the application of the ordinance. As the Court said in effect in *Hoffman Estates*, we should not because of this de minimis possibility be "prepared to hold that this risk jeopardizes the entire ordinance." 102 S.Ct. at 1196.

Bearing in mind, in any event, that the Supreme Court itself on the determination of lack of facial vagueness made its examination under a test appropriate to a criminal law, I turn to other aspects of the majority opinion. Even here the majority opinion directs its focus to the noncommercial purveyor, an underlying assumption which I regard as unwarranted in view of the prohibition of activities on the "premises" which phrase, as I have said, is defined as a business establishment.[2] The majority opinion also purports to differentiate "intended for use" from "marketed for use" which latter standard the Supreme Court found to be transparently clear, stating that "it describes a retailer's intentional display and marketing of merchandise." 102 S.Ct. at 1195. I simply fail to comprehend the reasoning of the majority that the phrase "intended for use" is broader than "marketed for use" and therefore somehow becomes vague, although "marketed for use" is "transparently clear" with regard to intention. Indeed, the Supreme Court opinion seems to equate the phrases, observing that "[t]he standard requires scienter since a retailer could scarcely 'market' items 'for' a particular use without intending that use." 102 S.Ct. at 1195.

The majority seems to find an increase in vagueness resulting from the enumeration of certain factors set forth in the ordinance which are to be considered in deciding what is an instrument. It appears to me that the factors enumerated do tend to make the prohibited conduct quite clear. Concern is implicit in the ordinance that the merchandiser of innocent objects normally traded to the general public not run afoul of the ordinance and attention is directed to legitimate businesses such as the registered dealer of tobacco products. Clairvoyance should not be needed to know whether advertising is slanted toward one group of purchasers or another and no doubt that is the reason the majority opinion endeavors, albeit unsuccessfully in my opinion, to relegate the West Allis ordinance to a non-economical status. The other factors enumerated also would seem to have a reasonable bearing on whether a "business establishment" is seeking legitimate or contraband-user customers.

Finally, the majority opinion considers the possibility of arbitrary enforcement but again the focus is on the West Allis ordinance as not being "a business regulation" which characterization the majority blithely brushes aside as not describing West Allis' enactment. I see no reason that West Allis, as in the case of the Village of Hoffman Estates, could not sufficiently narrow any potentially vague or arbitrary interpretation of the ordinance. In any event, on this aspect of the case, I think we are bound by the determination by the Supreme Court in *Hoffman Estates* that even if the "risk of discriminatory enforcement" is not insignificant we should not at this step "hold that this risk jeopardizes the entire ordinance." 102 S.Ct. at 1196.

In candor, I am compelled to conclude that we are involved in a stream of words and an implication of meanings which distort the plain, simple, and easily comprehendible language of this ordinance. I entertain no doubt whatsoever that the operator of a "business establishment" selling items which the operator knows will be purchased for the purpose of "ingesting, smoking, administering, or preparing any controlled substance" will not have any question but that the ordinance is applica-

**2.** The full definition in the ordinance is:

"Premises" means a business establishment and a structure of which it is a part and facility and appurtenances therein and grounds, areas and facilities held out for the use of patrons.

ble to him nor that the merchandiser of items not intended for such purpose will have any doubt that his business is not subject to the ordinance. I likewise cannot believe that any law enforcement officer will really have any difficulty in making such a determination.

I am not in disagreement with the majority opinion insofar as it decides that the ordinance provisions pertaining to simulated and controlled substances and simulated drugs do not violate the equal protection clause. Inasmuch, however, as I regard the entire ordinance as being facially free of constitutional threat, I see no necessity for a remand for a severability determination.