**CAMILLE CORPORATION, an Illinois corporation, Plaintiff-Appellant,**

v.

**William PHARES, et al., Defendants-Appellees.**

No. 82–1410.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1982.

Decided April 13, 1983.

Dorthea O'Dean, Rock Island, Ill., for plaintiff-appellant.

Robert J. Noe, Bozeman, Neighbour, Patton & Noe, Moline, Ill., for defendants-appellees.

Before PELL, CUDAHY, Circuit Judges, and BARTELS,[*] Senior District Judge.

PELL, Circuit Judge.

Camille Corporation (Camille), doing business as "Sight and Sound," retails merchandise such as T-shirts, records, tobacco, cigarette papers, and smoking accessories in East Moline, Illinois. Camille sought declaratory and injunctive relief below, claiming that the City of East Moline's drug paraphernalia ordinance is facially unconstitutional. The district court granted summary judgment in favor of the defendants, who were named both individually and in their capacity as officials of East Moline.

At issue on appeal are: (1) whether the ordinance is violative of the First Amendment right to commercial speech; (2) whether the ordinance is violative of the Equal Protection Clause; (3) whether the ordinance constitutes an impermissible interference with interstate commerce; and (4) whether the ordinance violates the Due Process Clause by reason of its claimed vagueness and overbreadth.

[*] John R. Bartels, Senior District Judge for the Eastern District of New York, sitting by designation.

## I. BACKGROUND

### A. The Ordinance

In December, 1980, the City of East Moline, Illinois (East Moline) amended its police regulations by enacting an ordinance entitled "Drug Paraphernalia" (East Moline ordinance). The enactment is based on the Model Drug Paraphernalia Act, drafted by the Drug Enforcement Administration of the United States Department of Justice (Model Act).[1]

Section 1(A)(1) of the East Moline ordinance defines drug paraphernalia. The definition refers to "all equipment, products and materials of any kind which are used, intended for use, or designed for use" with substances that are controlled pursuant to Illinois law. This general definition is followed by a list of twelve non-exhaustive examples of drug paraphernalia. East Moline ordinance, § 1(A)(1)(a)–(*l*). Each of the objects listed in the twelve examples is characterized as drug paraphernalia if it is "used, intended for use, or designed for use" with controlled substances. *Id.* The twelfth example, "Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, hashish, or hashish oil into the human body" is followed by a similarly nonexhaustive list of thirteen examples. *Id.* § 1(A)(1)(*l*)(1)–(13).

Section 1(A)(2) of the ordinance lists fourteen factors that "a court or other authority should consider, in addition to all other logically relevant factors" in determining whether an object is classifiable as drug paraphernalia. These factors, which are challenged by Camille, are discussed in detail, *infra*.

Sections 1(B), (C), (D), and (E) state the substantive prohibitions of the ordinance: possession of drug paraphernalia, § 1(B), manufacture or delivery of drug paraphernalia, § 1(C), delivery of drug paraphernalia to a minor, § 1(D), and advertisement of drug paraphernalia, § 1(E). Camille's First Amendment claim specifically challenges Section 1(E). The only other substantive section to which Camille's brief refers even indirectly is Section 1(C) which makes possession with intent to deliver or delivery of drug paraphernalia an offense if it occurs where one "know[s] or under circumstances where one reasonably should know" that the paraphernalia be used in connection with controlled substances.

Section 1(F), denominated "Penalty" refers to Section 1–4–1 of the City Code which in turn provides for a fine of not less than ten dollars or greater than five hundred dollars. An offense punishable by this section is denominated a misdemeanor and further permits "incarceration in a penal institution other than the penitentiary not to exceed six (6) months in addition to any fine that may be imposed." East Moline City Code, § 1–4–1. Section 1(G) provides for forfeiture, pursuant to Illinois law, of any drug paraphernalia, as defined by the ordinance.

Trivial differences in organization aside, the East Moline ordinance parallels precisely the Model Act with one exception: the model legislation includes a severability clause which is absent in the East Moline ordinance.

### B. Proceedings

The plaintiff brought suit in the Rock Island, Illinois circuit court seeking a declaratory judgment that the ordinance was violative of the First, Fifth, Eighth, and Fourteenth Amendments, as well as the Commerce Clause, of the United States Constitution. Camille sought a temporary restraining order and preliminary and permanent injunctive relief. On the defendants' petition, the cause was removed to the United States District Court for the Central District of Illinois. Following the filing of pre-trial memoranda by both parties and subsequent motions for summary judgment, the district judge entered summary judgment for the defendants.

Following the filing of the parties' initial briefs, this court issued its decisions in *Record Head Corp. v. Sachen,* 682 F.2d 672 (7th Cir.1982) (*Record Head*), and *Levas v. Vil-*

---

1. The full text of the ordinance is appended to this opinion.

*lage of Antioch,* 684 F.2d 446 (7th Cir.1982) (*Antioch*). The parties submitted supplemental memoranda, pursuant to court order, analyzing the impact of those two cases and of the Supreme Court disposition in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 72 L.Ed.2d 476 (1982) (*Hoffman Estates*).

## II. IMPACT OF SUPREME COURT AND SEVENTH CIRCUIT PRECEDENT

In *Hoffman Estates,* the Supreme Court upheld the constitutionality of an ordinance requiring the licensing of businesses that sold any items "designed or marketed for use with illegal cannabis or drugs." Two Seventh Circuit cases, *Record Head* and *Antioch,* have discussed the impact of *Hoffman Estates* on the method of analysis to be employed in evaluating the constitutionality of drug paraphernalia legislation. That general discussion will not be repeated here.

A majority of the panel in *Record Head* upheld the finding of the judge below that the ordinance at issue was unconstitutionally vague. The ordinance involved in *Record Head* differed significantly from the Model Act. *See* 682 F.2d at 675. By contrast, the legislation challenged in *Antioch* was based on the model legislation. The *Antioch* district court had deleted some aspects of the ordinance pursuant to the severability clause contained in that enactment. Those deletions were not challenged on appeal. The ordinance, as reviewed by this court, was found constitutional.

■ *Record Head* and *Antioch* directly answer several of the arguments raised by Camille in this case. First, *Antioch* noted that, under *Hoffman Estates,* the only First Amendment rights affected by drug paraphernalia legislation are commercial speech rights. 684 F.2d at 451. Unless the plaintiff is an advertiser, however, he is precluded from challenging a prohibition such as that contained in Section 1(E) of the East Moline ordinance on these grounds because one cannot assert the commercial speech rights of others. *Id.* (citing *Hoffman Estates,* 455 U.S. at 496–97, 102 S.Ct. at 1192–93); *accord, Record Head,* 682 F.2d at 676. Camille has not claimed that it is engaged in advertising; therefore, its First Amendment claim must fail.[2]

■ Second, the *Antioch* court noted that the definition of drug paraphernalia included in the Model Act, which appears as Section 1(A)(1) in the East Moline ordinance, "satisfied the fair notice aspect of the vagueness test, even in its strictest form." 684 F.2d at 452; *see also id.* at 453 n. 9 (citing other courts that have found variations of the Model Act's definitional section to be constitutional); *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1218–19 (11th Cir.1982) (rejecting claims that "designed for use" is unconstitutional and that definitional section permits conviction based on transferred intent).

The *Antioch* court also recognized that the scienter requirement common to the model legislation, the Antioch ordinance, and the East Moline legislation precludes a conviction premised on the mental state of someone other than the violator. 684 F.2d at 453; *accord, Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1218–19 (11th Cir.1982). The Sixth Circuit, in *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 928–29 (6th Cir.1980), *vacated and remanded,* 451 U.S. 1013, 101 S.Ct. 2998, 68 L.Ed.2d 384 (1981),[3] the decision on which Camille prin-

---

**2.** Even if Camille were asserting its own First Amendment commercial speech rights, its claim would fail. The ordinance is directed at advertisements encouraging illegal activity. As such, it may be regulated or banned entirely. *Hoffman Estates,* 455 U.S. at 496, 102 S.Ct. at 1192; *New England Accessories Trade Ass'n v. City of Nashua,* 679 F.2d 1, 3–5 (1st Cir.1982);

*Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1217 (11th Cir. 1982); *Casbah, Inc. v. Thone,* 651 F.2d 551, 564 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982).

**3.** The Sixth Circuit disposition in *Record Revolution No. 6 v. City of Parma,* 618 F.2d 916 (6th Cir.1980), has twice been vacated and remand-

cipally relies, similarly concluded that the definitional section of the model legislation was not vulnerable to the claim that it permitted a conviction based on transferred intent. To the extent, therefore, that Camille's vagueness challenge is premised on Section 1(A)(1) of the East Moline ordinance, *Antioch* fully supports our rejection of the appellant's argument.

■ Fourth, *Antioch* has predetermined in large part the result of Camille's claim that the factors "a court or other authority should consider," East Moline ordinance, § 1(A)(2), in determining whether an object constitutes drug paraphernalia are impermissible. The factors challenged in *Antioch* that are similarly challenged in the instant case are:[4]

(a) Statements by an owner or by anyone in control of the objects concerning its use;

(b) Prior convictions, if any, of any owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

(c) The proximity of the object, in time and space, to a direct violation of [Illinois law];

(d) The proximity of the object to controlled substances;

. . . .

(*l*) Direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise;

(m) The existence and scope of legitimate uses for the object in the community; . . . [and]

(n) Expert testimony concerning its use.

The *Antioch* court found (a) and (d) to be "highly probative," 684 F.2d at 454; (b) and (c) to be "probative, provided their possible prejudicial impact is adequately weighed

against applicable evidentiary rules," *id.;* (*l*) and (m) to be "less probative, but still relevant," *id.;* and (i) and (n), although of minimal probative value, to be acceptable because the "chance that the weaker [factors would] be relied on is too remote to sustain a facial vagueness attack," *id.* (distinguishing *Record Head,* 682 F.2d at 677). *Antioch* therefore supports the conclusion of the judge below that the considerations enumerated in Section 1(A)(2)(a), (b), (c), (d), (i), (*l*), (m), and (n) of the East Moline ordinance are impervious to constitutional attack.

■ Camille also claims that the East Moline ordinance is violative of the Equal Protection Clause.[5] In *Record Head,* this court recognized that under *Hoffman Estates,* the "rational basis" test must be applied in scrutinizing equal protection challenges to drug paraphernalia legislation. 682 F.2d at 674–75. The *Record Head* panel applied this standard in rejecting the district judge's finding that factors similar or identical to subsections 1(A)(2)(k), (*l*) and (n) in the East Moline ordinance violated the Equal Protection Clause. *Id.* at 678–79. The majority stated: " 'It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.' " *Id.* at 679 (quoting *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–465, 99 L.Ed. 563 (1955)).

As in *Record Head,* the problem of drug abuse is the evil at which the East Moline ordinance is directed. We have no doubt that the legislation drafted by East Moline is at least a "rational" response to this problem. Consistent with *Record Head,* therefore, we conclude that the appellant's equal protection claim against the instant ordinance must fail.

ed by the Supreme Court. *See* 451 U.S. 1013, 101 S.Ct. 2998, 68 L.Ed.2d 384 (1981) and, 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982).

**4.** The district court in *Antioch* had deleted factor (k) in its entirety and factor (f), in part, pursuant to the severability clause contained in the *Antioch* ordinance. These deletions were

not challenged on appeal. Factors (f) and (k) are discussed in Section IV, *infra.*

**5.** The appellant's brief devotes virtually no attention to this aspect of its claim; rather, the equal protection claim is merely mentioned following Camille's exposition of its due process objections to the factors enumerated in Section 1(A)(2) of the ordinance.

We turn therefore to those claims raised by the appellant that are not clearly foreclosed by *Hoffman Estates, Antioch,* and *Record Head.*

## III. COMMERCE CLAUSE

Camille claims that the ordinance violated the Commerce Clause of the United States Constitution. Art. I, § 8, cl. 3. The Stipulated Facts in the instant case establish that the plaintiff-appellant both receives merchandise through interstate commerce and sells an unidentified volume of goods to out-of-state customers.

 The factors to be considered in analyzing whether legislation poses an unconstitutional interference with interstate commerce are as follows:

1. The local legislation must serve a legitimate local public interest;
2. The local legislation must affect interstate commerce only incidentally; and
3. If the first two elements are satisfied, the burden on interstate commerce must not be excessive in relation to the local benefits.

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). There is no doubt that the instant legislation serves East Moline's interest in curbing drug abuse within its borders. On its face, the ordinance is concerned only with local activity; therefore, any impact on interstate commerce is only incidental. The extent of any burden which might be imposed on Camille's interstate activities is unclear from the record because there is no indication of the volume of the appellant's interstate dealings. In light of the strong public interest served by the legislation, we conclude that Camille's showing of burden falls far short of what would be required to entertain seriously its argument that an impermissible burden on interstate commerce exists in this instance. *See Mid-Atlantic Accessories Trade Association v. Maryland,* 500 F.Supp. 834, 849 (D.Md. 1980); *Nova Records, Inc. v. Sendak,* 504 F.Supp. 938, 943 (S.D.Ind.1980); *aff'd,* 706 F.2d 782 (7th Cir.1982).

## IV. DUE PROCESS OBJECTIONS

Unresolved by prior precedent in this court are Camille's challenges regarding subsections 1(A)(2)(f) and (k) in the East Moline ordinance.

*A. Section 1(A)(2)(f)*

 The sixth enumerated factor which a court or other authority is directed to consider in determining whether an object constitutes drug paraphernalia subject to the ordinance is:

(f) Direct or circumstantial evidence of the intent of the owner, or of anyone in control of the object, to deliver it to persons whom he knows, *or should reasonably know,* intend to use the object to facilitate a violation of [Illinois law regarding controlled substances]; the innocence of an owner, or of anyone in control of the object, as to a direct violation of [such laws] shall not prevent a finding that the object is intended for use, or designed for use, or designed for use [sic] as drug paraphernalia.

East Moline ordinance, § 1(A)(2)(f) (emphasis added).

Camille's initial objection is that this factor permits the defendant's guilt to be inferred "from proof of the intent of someone else (an owner or someone in control of the object) to use that item for drug-related activities (despite the innocence of that possessor)." This objection is coherent only if one assumes that the alleged violator is not the owner or person in control of the object. As noted in *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916 (6th Cir.1980), *vacated and remanded,* 451 U.S. 1013, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1981) (*Record Revolution*), the comments to the Model Act "refer consistently to the potential defendant as the 'person in control' of the item." *Id.* at 929. Further, this court in *Antioch* rejected the argument that the definitional section in the Model Act permits a conviction based on someone else's intent. *See* Section II, *supra.*

■ The appellant's second objection to this subsection is that it permits a conviction to be premised on mere negligence. The district court in *Antioch* had deleted the phrase "or should reasonably know" from factor (f). The deletion was not challenged on appeal. This question therefore has not previously been addressed by this court.

Even if the person in control of an object "should reasonably know" that another intends to use it for drug-related activities, the object is not classifiable as drug paraphernalia unless the scienter requirement of Section 1(a)(1) is fulfilled. To meet that requirement, the person in control of the object—the alleged violator of the ordinance—must have used the object, intended it for use, or designed it for use, *see* East Moline ordinance, § 1(A)(1), with controlled substances. A defendant who does not fall within one of those three classifications cannot be convicted pursuant to the ordinance even if he "should have known" that a recipient of the object intended it for use with illegal drugs. *Casbah, Inc. v. Thone,* 651 F.2d 551, 560–61 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Mid-Atlantic Accessories Trade Association v. Maryland,* 500 F.Supp. 834, 845 (D.Md.1980); *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. 289 (D.Del.1980). We agree with these courts which have concluded that, in light of the scienter requirement in the initial definitional section of the Model Act, the "should reasonably know" language of factor (f) is not unconstitutional.

■ The appellant has not specifically mentioned the substantive section of the ordinance that includes the same "reasonably should know" language.[6] East Moline ordinance, § 1(C). Because the appellee responded as though Section 1(C) were at issue, we briefly address the constitutionality of that section.

---

6. The phrase "reasonably should know" also appears in Section 1(E) of the East Moline ordinance, which pertains to advertisement of drug paraphernalia. Camille has challenged

Section 1(C) permits a conviction if "drug paraphernalia" is possessed with intent to deliver or actually delivered "knowing or under circumstances where one reasonably should know" that it will be used in illegal drug activities. An item is drug paraphernalia, however, only if the scienter requirement of Section 1(A)(1) is satisfied. Rather than permitting a conviction based on negligence, the language of Section 1(C) would appear to require *both* that the violator intended the object for use with illegal drugs and also at least had reason to know that the transferee contemplated such illegal usage. As such, the section limits rather than expands the circumstances under which a conviction can occur. We therefore are unpersuaded that Section 1(C) is facially unconstitutional. *Accord, Casbah, Inc. v. Thone,* 651 F.2d 551, 561 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. 289, 294 (D.Del.1980); *see also New England Accessories Trade Association v. City of Nashua,* 679 F.2d 1, 7 (1st Cir.1982); *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1219 (11th Cir.1982). *Contra, Record Revolution,* 638 F.2d at 935–36.

*B. Section 1(A)(2)(k)*

■ The eleventh enumerated factor that a court or other authority is directed to consider in determining whether an item is classified as drug paraphernalia is as follows:

(k) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products.

East Moline ordinance, § 1(A)(2)(k). Because this factor was deleted by the district court in *Antioch,* its validity was not addressed in our disposition of that case.

Camille does not state specifically any objection to factor (k). In *Record Revolu-*

---

this section only as violative of the First Amendment, an argument we rejected in Section II, *supra.*

*tion,* 638 F.2d at 933 n. 24, the Sixth Circuit affirmed the district judge's conclusion that the factor was vague and overbroad. The district judge had reasoned that a risk of arbitrary and discriminatory enforcement existed because the term "legitimate" is imprecise. 492 F.Supp. 1157, 1171 (N.D. Ohio 1980). We will assume that Camille shares the view of the *Record Revolution* courts.

In *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1219–20 (11th Cir.1982), the Eleventh Circuit recently held that even if the "legitimate supplier" language poses a risk of discriminatory enforcement, this due process claim is not cognizable in a pre-enforcement proceeding. We agree with the conclusion of the Eleventh Circuit. Even if "legitimate supplier" is not the perfect choice of words, factor (k), as a whole, conveys a distinction that is relevant to determining whether items constitute drug paraphernalia pursuant to Section 1(A)(1) of the East Moline ordinance. Further, as the district judge in *Mid-Atlantic Accessories Trade Association v. Maryland,* 500 F.Supp. 834, 846 (D.Md.1980), stated:

> The simple answer to these contentions [that the factors are vague] is that none of these factors is dispositive. These listed criteria do not define drug paraphernalia but are merely to be considered by a court or other authority along with other relevant factors in determining whether an object is covered by the statutory definition.

We conclude, therefore, that Section 1(A)(2)(k), is not unconstitutional on its face.

## CONCLUSION

The appellants rely heavily on the fact that the East Moline ordinance lacks a severability clause. They reason that this so distinguishes the case from *Antioch* that the East Moline ordinance must be struck down in its entirety. Camille overlooks the fact that the *district court* in *Antioch* had deleted parts of the ordinance and that the severance was not challenged before this court. This case represents the first instance in which this court has considered the "should reasonably know" language, East Moline ordinance §§ 1(A)(2)(f), 1(C), and the "legitimate supplier" distinction, *id.* § 1(A)(2)(k), utilized in legislation patterned on the Model Act. We agree with those courts that have found these sections of the Model Act facially constitutional. The absence of a severability clause in the East Moline ordinance is therefore irrelevant.

Having considered all the arguments urged by the parties, the judgment of the district court is

Affirmed.

## APPENDIX

AN ORDINANCE ADDING SECTION 6–3–34 ENTITLED "DRUG PARAPHERNALIA" OF CHAPTER 3 ENTITLED "MISDEMEANORS" OF TITLE 6 ENTITLED "POLICE REGULATIONS" OF THE CITY CODE OF THE CITY OF EAST MOLINE OF 1974 AND AS AMENDED.

Whereas, the use of controlled substances is a significant problem not only in the City of East Moline, but also in American society; and

Whereas, said use creates greater problems when said use is by minors; and

Whereas, the manufacture, sale and advertisement of printed matter, instructions, and other things or printed matter encouraging the use of controlled substances or written instructions of the use of controlled substances or facilitating the use of controlled substances contributes to and exacerbates the problem mentioned hereinabove; and

Whereas, these devices, printed matter, instructions, and so on are commonly known as and promoted as drug paraphernalia; and

Whereas, this City Council finds and declares that by controlling the sale and use of drug paraphernalia, the problem of use and abuse of controlled substances can be alleviated;

Now, Therefore, Be It Ordained By The City Council Of The City Of East Moline, County Of Rock Island, State Of Illinois:

*Section 1.* Chapter 3 entitled "Misdemeanors" of Title 6 entitled "Police Regulations" of the City Code of the City of East Moline is hereby amended by the addition of Section 6–3–34 entitled "Drug Paraphernalia" to read as follows:

"6–3–34. DRUG PARAPHERNALIA:

(A) Definition of Drug Paraphernalia:

1. The term "Drug Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of Chapter 56½, Section 701 *et seq.* and 1100 *et seq.* Illinois Revised Statutes (1979). It includes but is not limited to:

(a) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(b) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;

(c) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance;

(d) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness or purity of controlled substances;

(e) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;

(f) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use,

or designed for use in cutting controlled substances;

(g) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marihuana;

(h) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances;

(i) Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;

(j) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

(k) Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body;

(*l*) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

(1) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) Carburetion tubes and devices;

(3) Water pipes;

(4) Smoking and carburetion masks;

(5) Roach clips; meaning objects used to hold burning material, such as a marihuana cigarette that has become too small or too short to be held in the hand;

(6) Miniature cocaine spoons, and cocaine vials;

(7) Chamber pipes;

(8) Carburetor pipes;

(9) Electric pipes;

(10) Air-driven pipes;

(11) Chillums;

(12) Bongs;

(13) Ice pipes or chillers.

2. In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(a) Statements by an owner or by anyone in control of the object concerning its use;

(b) Prior convictions, if any, of any owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

(c) The proximity of the object, in time and space, to a direct violation of Chapter 56½, Section 701 *et seq.* and 1100 *et seq.* Illinois Revised Statutes (1979);

(d) The proximity of the object to controlled substances;

(e) The existence of any residue of controlled substances on the object;

(f) Direct or circumstantial evidence of the intent of the owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of Chapter 56½, Section 701 *et seq.* and 1100 *et seq.* Illinois Revised Statutes (1979); the innocence of an owner, or of anyone in control of the object, as to a direct violation of Chapter 56½, Section 701 *et seq.* and 1100 *et seq.* Illinois Revised Statutes (1979), shall not prevent a finding that the object is intended for use, or designed for use, or designed for use as drug paraphernalia;

(g) Instructions, oral or written, provided with the object concerning its use;

(h) Descriptive materials accompanying the object which explain or depict its use;

(i) National and local advertising concerning its use;

(j) The manner in which the object is displayed for sale;

(k) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(*l*) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

(m) The existence and scope of legitimate uses for the object in the community;

(n) Expert testimony concerning its use.

(B) Possession of Drug Paraphernalia: It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of Chapter 56½, Section 701 *et seq.* and 1100 *et seq.* Illinois Revised Statutes (1979).

(C) Manufacture or Delivery of Drug Paraphernalia: It is unlawful for any person to deliver, possess with intent to deliver, drug paraphernalia, knowing or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of Chapter 56½, Section 701 *et seq.* and 1100 *et seq.* Illinois Revised Statutes (1979).

(D) Delivery of Drug Paraphernalia to a Minor: Any person 18 years of age or over who violates Section 6–3–34(C) by delivering drug paraphernalia to a person under 18 years of age who is at least 3 years his junior is guilty of a special offense.

(E) Advertisement of Drug Paraphernalia: It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia.

(F) Penalty: Except for violation of Section 6–3–34(D), all violations of this Ordinance shall be punishable as provided in 1–4–1 of this City Code.

(G) Forfeiture: All drug paraphernalia as defined by Section 6–3–34(A) of this

Code shall be subject to forfeiture as provided in Chapter 56½, Section 712 and 1505, Illinois Revised Statutes (1979)."

*Section 2.* All ordinances or parts of ordinances in conflict herewith are expressly repealed, insofar as they so conflict.

*Section 3.* That this Ordinance shall be in full force and effect from and after its passage, approval and publication thereof, as provided by law.

PASSED BY THE CITY COUNCIL OF THE CITY OF EAST MOLINE, ILLINOIS, this 15th day of December, A.D.1980, and APPROVED BY THE MAYOR OF SAID CITY this 15th day of December, A.D.1980.

/s/ Dennis J. Jacobs

Mayor of the City of East Moline, Illinois

ATTEST:

/s/ Clarence H. Vyncke

City Clerk of the City of East Moline, Illinois