**LEVAS AND LEVAS, d/b/a Levas T-Shirts, Plaintiffs-Appellants,**

v.

**VILLAGE OF ANTIOCH, ILLINOIS, et al., Defendants-Appellees.**

No. 80–1675.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1981.

Decided July 7, 1982.

---

Michael L. Pritzker, Chicago, Ill., for plaintiffs-appellants.

Michael B. Nash, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and EAST, Senior District Judge.*

CUMMINGS, Chief Judge.

Peter and Ernest Levas, doing business as Levas T-Shirts, brought suit in federal district court to challenge the facial constitutionality of a drug paraphernalia ordinance enacted by the trustees of the Village of Antioch, Illinois. They sought declaratory and injunctive relief based on Fourteenth Amendment due process and equal protection claims, challenges under the First and Eighth Amendments as incorporated into the Fourteenth Amendment, and a contention that the ordinance violated the Commerce Clause. The district judge denied all relief, finding no constitutional infirmity in the ordinance. The Levas brothers appealed, and we heard oral argument on June 8, 1981. Thereafter the case was held for decision pending the Supreme Court's resolution of a related case, *Village of Hoffman Estates v. Flipside*, —— U.S. ——, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). This Court, *sua sponte*, ordered the parties to submit simultaneous memoranda concerning the effect of the *Hoffman Estates* decision. Informed by the original argument, the Supreme Court's decision, and the additional

---

* The Honorable William G. East, Senior District Judge for the District of Oregon, is sitting by designation.

briefing, we now affirm the judgment of the district court.

## I. Procedure in the District Court

As a threshold matter, the Levases object to the procedures employed by the district judge. The Levases had appeared before Judge Leighton on April 16, 1980, seeking a temporary restraining order (TRO); the defendants opposed it. At the close of the hearing, the judge indicated that he would rule on April 28. Instead, he issued his decision, with two days' notice and no further hearing, on April 22. In his decision the judge denied temporary, preliminary and permanent injunctive and also declaratory relief. 4/22/80 Tr. at 6, 18–20. The Levases maintain that different evidentiary standards and burdens of proof apply to temporary restraining orders and preliminary injunctions, and that the trial judge's consolidation of the proceedings on short notice deprived them of an adequate opportunity to make their case. Br. 15–17.

A review of the record convinces us that the trial judge acted properly. When a TRO is issued *ex parte* and without notice, the applicant must show "that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition," and that he has tried to give notice or has special reasons why notice should be excused. Federal Rules of Civil Procedure 65(b). The trade-off for *ex parte* issuance is that the TRO has a limited life.[1] Thus a party might fail to satisfy the criteria for an *ex parte* TRO and still be entitled to a preliminary injunction. This is the position the Levases claim to have been put in.

█ In fact, no TRO was being sought *ex parte*: the defendants had notice and appeared at the hearing to contest the motion. The Levases were therefore not required to make the higher showing contemplated by Rule 65(b). The court could and did treat the application as one for a preliminary injunction. *MLZ Inc. v. Fourco*

*Glass Co.*, 470 F.Supp. 273, 275 (E.D.Tenn. 1978), citing 11 Wright & Miller Federal Practice and Procedure § 2951. There was no reason for the judge to hold a second evidentiary hearing, explicitly denominated a hearing on the Levases' motion for a preliminary injunction, when the first hearing had already served that function.

Perhaps the Levases are objecting, somewhat inartfully, to a different problem: the trial judge's decision to deny all relief, rather than just preliminary injunctive relief, when he ruled on April 22. To that objection, too, there is an appropriate response. Rule 65(a)(2) of the Federal Rules of Civil Procedure allows the court to advance a trial on the merits, consolidating it with the hearing on the application for a preliminary injunction.

> It is quite clear * * * that no notice [of consolidation] need be given prior to the hearing, since the rule provides in terms that advancement and consolidation may be ordered *after the commencement of the hearing*. What is required is that the parties be given a full opportunity to present evidence in the case. * * * A plaintiff putting on his case for temporary relief may hold back evidence, or, indeed, his case may not be fully developed. Thus it is important for him to know when he puts on his evidence that he is having his final "day in court."
>
> 7.2 Moore's Federal Practice ¶ 65.04[4] (emphasis in original; footnotes omitted)

Here the Levases concededly had put on all their evidence. At the beginning of the April 16 hearing, they said, "Your honor, we have agreed there probably are no factual disputes that would require testimony." 4/16/80 Tr. at 2. The issues had been fully briefed, and in the hearing they had had an opportunity to develop all the legal arguments in support of their facial attack on the ordinance. When the judge issued his final decision on April 22, the Levases'

---

1. A TRO cannot last for longer than 10 days, but it can be extended for an additional 10 days if the party seeking an extension asks for it before the first period has run and demonstrates good cause. It can also be extended for a longer period if the party against whom it is issued consents. Fed.R.Civ.P. 65(b).

attorney sought clarification of some points but raised no objection to the procedure. The judge explained his reasons for acting expeditiously: "Your clients are entitled to know as promptly as possible and that is why I asked you to come here today instead of waiting until next Monday." The attorney's response was: "Thank you, your Honor." 4/22/80 Tr. at 24. Finally on May 7 the Levases. appeared again before the district judge, to ask for an injunction pending appeal. The request was denied. The Levases made no objection then, either, to the April 22 procedure.

The Levases' claim of prejudice in the development of their case is therefore without merit. See, *e.g., Socialist Workers Party v. Illinois State Board of Elections,* 566 F.2d 586 (7th Cir. 1977), aff'd, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (no prejudice to defendants when permanent injunction issued after hearing on application for preliminary injunction); *Cousins v. City Council of the City of Chicago,* 322 F.Supp. 428 (N.D.Ill.1971) (permanent relief denied at close of hearing in which preliminary injunction was sought against Chicago redistricting ordinance), rev'd on other grounds, 466 F.2d 830 (7th Cir. 1972), certiorari denied, 409 U.S. 893, 93 S.Ct. 85, 34 L.Ed.2d 151.

II. The District Court's Decision that the Antioch Ordinance Is Constitutional

A. The Terms of the Ordinance

In recent years communities across the country have come to believe that criminal laws prohibiting the possession, sale, and distribution of drugs do not adequately deter drug use, particularly among the young. Accordingly, many states, counties, and municipalities have enacted drug paraphernalia ordinances designed to stop or control the sale of equipment that can be used to grow, purify, store, ingest, inhale, or inject drugs. The drafting problem inherent in such ordinances, however, is that few items are useful solely as drug implements, and an astonishing variety of ordinary articles can be converted to drug use. The Model Drug Paraphernalia Act, drafted by the Drug Enforcement Administration, is an attempt to write a statute that will be broad enough to deal with the problem effectively, yet not so broad that it impinges on constitutionally protected conduct or so vague that neither the law's targets nor its enforcers know what it means.[2] The distinctive features of the Model Act are two: it attempts to give content to the necessarily general definition of drug paraphernalia by listing examples and factors to be considered; and it contains an intent requirement that is meant to mitigate any definitional uncertainty.

The Village of Antioch has enacted the Model Drug Paraphernalia Act, with some modification, as its ordinance. The full text of the Antioch ordinance is set out in the Appendix. Antioch has taken over verbatim the Model Act's:

(1) definition of drug paraphernalia, which consists of a general paragraph, followed by an illustrative, but not exhaustive, list of concrete examples;

(2) list of factors "a court or other authority should consider in addition to all other logically relevant factors" in deciding whether a particular object qualifies as drug paraphernalia;

(3) prohibition on the sale or delivery of drug paraphernalia; and

(4) broad severability provision.

Like the Model Act, the Antioch ordinance has a scienter requirement, though it is differently drafted in the two statutes. The Model Act includes an intent requirement in the definition of drug paraphernalia,[3] and repeats it in a slightly different

---

2. The history of the Model Drug Paraphernalia Act is set out in Note, "The Model Drug Paraphernalia Act: Can We Outlaw Head Shops— And Should We?" 16 Ga.L.Rev. 137 (1981). A complete text of the Model Act can be found at 148, n. 52.

3. "[U]sed, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the hu-

form in the offense section.[4] The Antioch ordinance sets out a scienter requirement only in the definition of drug paraphernalia [5] and incorporates it into the offense section by referring to the term "drug paraphernalia." [6]

In addition, the village has added language of its own banning (apparently on a *per se* basis) [7] the sale or delivery of cocaine spoons and marijuana or hashish pipes. The penalty for violating the ordinance is a fine of $25 to $500, and each day of violation is treated as a separate offense.

Antioch has not enacted the Model Act's ban on the manufacture or use of drug paraphernalia, although actual use by the purveyor of paraphernalia is relevant to his intent. Nor does the Antioch ordinance contain the Model Act's ban on advertising that in some degree encourages illegal drug use or its enhanced penalties for sales to certain minors.

B. The District Court's Decision

In his April 22 order, the district judge found all appellants' constitutional claims except vagueness insubstantial. On the vagueness issue, the district judge's holding is that the short definitions are "easily understood, clear, concise, lucid and understandable," 4/22/80 Tr. at 9, and that the definition of drug paraphernalia, though it is long and elaborate, is "definite and clear," *id.* at 11.

However, Judge Leighton based his opinion explicitly on the reasoning and result of

Judge Manos in *Record Revolution No. 6, Inc. v. City of Parma*, 492 F.Supp. 1157 (N.D.Ohio 1980).[8] We think therefore that Judge Leighton meant his decision to embody the same modifications that Judge Manos deemed necessary to uphold the same Model Act provisions in the Parma ordinance. These are:

(1) The intent language, "used, intended for use, or designed for use" must be understood as a somewhat awkward attempt to assign the appropriate scienter to each category of offender within the Model Act's ambit. The Parma ordinance reached manufacturers ("designed for use"), distributors ("intended for use"), and possessors ("used"). The Antioch ordinance applies only to the distributional level. We need not strike "designed for use" or "used" from the Antioch ordinance (although they will rarely have any application to the head shop proprietor), so long as it is clearly understood that no one can constitutionally be convicted on the basis of someone else's intent. See 492 F.Supp. at 1168–1169.

(2) Wherever the Model Act allows intent to be inferred from what the charged party knew or "should reasonably have known," the quoted language must be excised. (In the Model Act the phrase occurs four times in Article II (Offenses and Penalties) and once in Article I's enumeration of factors a court may con-

---

man body a controlled substance * * * or cannabis * * *."

**4.** "It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance * * * or cannabis * * *."

**5.** Identical to the language quoted in note 3 *supra.*

**6.** "It shall be unlawful for any person to sell, offer for sale, display, furnish, supply or give

away any cocaine spoon, marijuana pipe, hashish pipe, or any drug paraphernalia."

**7.** See IV.B *infra.*

**8.** "The Court incorporates by reference hereto Judge Manos' memorandum opinion * * *." 4/22/80 Tr. at 10. Judge Leighton further explained: "I'm going to cite, and let it be understood I am citing the entire opinion of Judge Manos in Record Revolution No. 6, Inc. v. City of Parma, Ohio, No. C 80–38 in its entirety, with every reservation that Judge Manos made because I think Judge Manos spent a good deal of time analyzing this subject and there is no need in my going over the same ground." *Id.* at 21.

sider in deciding whether a particular item is drug paraphernalia. In the Antioch ordinance it occurs only once in the list of factors.) If an intent requirement is to compensate for the vagueness that inheres in the definition of drug paraphernalia (see IV.A *infra*), the intent must be based on knowledge of facts or strong probabilities—rather than on negligent failure to know. 492 F.Supp. at 1171, n.7; 1174.

(3) Among the factors a court or other authority may consider is whether the owner or person in control of a particular object is a "legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products." Judge Manos severed that factor, because it posed a serious risk of discriminatory enforcement. 492 F.Supp. at 1171. Judge Leighton apparently concurred.

There is one further complication in parsing Judge Leighton's opinion. The Sixth Circuit reversed Judge Manos' decision, 638 F.2d 916 (1981); and the Sixth Circuit's decision in turn has twice been vacated and remanded by the Supreme Court—the first time for reconsideration in light of a recently enacted Ohio statute, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384; the second time for reconsideration in light of the *Hoffman Estates* decision, —— U.S. ——, 102 S.Ct. 2227, 72 L.Ed.2d 840. Of course, the Sixth Circuit's decision would not bind us or Judge Leighton, and the Supreme Court has expressed no view on the merits of the case. But in fact the Sixth Circuit approved Judge Manos' construction of the intent requirement in (1) above (p. 450 *supra*), 638 F.2d at 928–929; and disapproved of the severances in (2) and (3) (p. 450 *supra*) chiefly because the Parma ordinance had a narrow severability provision, *id.* at 932, a feature it does not share with the Antioch ordinance or the Model Act.

### III. The Effect of *Hoffman Estates*

Before we address the Levas brothers' contentions on appeal, we must decide what effect the Supreme Court's decision in *Hoffman Estates v. Flipside*, —— U.S.

——, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) has on either the methodology of our review or our final determination. The parties have argued, in predictable and cursory fashion, that *Hoffman Estates* mandates validation or invalidation of the ordinance. Given that *Hoffman Estates* dealt with a licensing ordinance, not based on the Model Act at all, we cannot treat it—as appellees suggest—as direct precedent. But *Hoffman Estates* also sets important limits on facial constitutional attacks in the drug paraphernalia area, and is therefore not so distinguishable as appellants would have us believe.

We have recently had occasion to describe the nature of the inquiry under *Hoffman Estates*. *Record Head Corp. v. Sachen*, 682 F.2d 672 at 674–75 (7th Cir. 1982). The Supreme Court has made clear that drug paraphernalia legislation of either the Hoffman Estates or the Antioch type does not infringe freedom of speech. At most it may indirectly influence the conduct of certain advertisers, but the appellants here have no such complaint and they cannot assert the commercial speech rights of others. —— U.S. at ——, 102 S.Ct. at 1191–1193. The Supreme Court has also made clear that unless drug paraphernalia legislation implicates a fundamental right or suspect classification, it need only satisfy a rational basis test to satisfy most due process or equal protection claims. *Id.* at ——, n. 9, 102 S.Ct. at 1192, n. 9; ——, n. 21, 102 S.Ct. at 1196, n. 21. Neither the Hoffman Estates nor the Antioch ordinance has any difficulty passing that relatively undemanding test, especially in the context of a pre-enforcement challenge. Thus the likeliest constitutional infirmity that might arguably be found in such legislation is vagueness, which also offends the Due Process Clause. But a finding of unconstitutional vagueness cannot be based on uncertainty at the margins, or on a parade of bizarre hypothetical cases: problems of that order can be resolved in challenges to the ordinance as applied. *Id.* at —— and nn. 21, 22, 102 S.Ct. at 1195–96 and nn. 21, 22. In the absence of First

Amendment issues or other constitutionally protected conduct, "the complainant must prove that the enactment is vague ' "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). Such a provision simply has *no* core.' *Smith v. Goguen,* 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974)." *Hoffman Estates, supra,* —— U.S. at ——, n. 7, 102 S.Ct. at 1191, n. 7. The Antioch ordinance, as explained below, is not vague in this sense.

## IV. The Issues on Appeal

Under *Hoffman Estates,* virtually all appellants' constitutional arguments are bound to fail in a pre-enforcement, facial challenge. Only two require extended discussion: the vagueness argument, because Antioch's ordinance differs in significant ways from the Hoffman Estates licensing provision; and the argument that the village's ban on cocaine spoons and marijuana or hashish pipes impermissibly creates a strict liability offense—an issue that the *Hoffman Estates* Court had no occasion to address.

## A. Vagueness

█ In deciding whether the ordinance is vague in the strong sense in which the term is used in *Coates v. City of Cincinnati* or *Smith v. Goguen, supra,* we cannot use a simple test, mechanically applied. We start from the premise that there are two, co-equal dangers inherent in vague enactments: lack of notice to potential offenders and standardless enforcement. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222. We also note that criminal laws are more searchingly examined for vagueness, because the consequences of imprecision are severe, than are either pure economic regulation (with or without quasi-criminal penalties) or civil legislation. *Hoffman Estates, supra,* —— U.S. at ——, 102 S.Ct. at 1191–1195. Fi-

nally, we recognize that in the vagueness context, the canons of construction that would narrow a statute to avoid constitutional problems have no place. *Id.* at ——, n. 6, 102 S.Ct. at 1191, n. 6. The statute must be construed to give full effect to any possible ambiguities. Here, however, that last proposition requires some qualification. Neither party has challenged the district judge's interpretation of the intent requirement, or the severances of one factor and the "should reasonably have known" language. The appellants argue that these modifications are not curative, but the appellees are apparently content with them.

The statute, as we now view it, has an offense section that makes it "unlawful for any person to sell, offer for sale, display, furnish, supply or give away any cocaine spoon, marijuana pipe, hashish pipe, or any drug paraphernalia." The offense section has no explicit intent requirement. However, the drug paraphernalia definition makes clear that whether an item is in the class of drug paraphernalia or not—and therefore whether the offense section is called into play—depends on the intent of the person charged with a violation that the item be used for "planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance * * * or cannabis." The drug paraphernalia definition also lists eleven categories of drug paraphernalia (the eleventh with its own list of twelve additional examples), and the list, while not exhaustive, gives some substance to the term "drug paraphernalia."

█ Thus there is a large, but not entirely amorphous class of items that can be paraphernalia, and an intent requirement that differentiates innocent transfers of multi-purpose items from illegal transfers of drug paraphernalia. That combination satisfies the fair notice aspect of the vagueness test, even in its strictest form. In holding that the interaction of definition

and intent allays vagueness, we are in accord with several other Courts of Appeal[9] and apparently with the Supreme Court in *Hoffman Estates*,[10] but our position still requires explanation and limitation.

The notion that an intent requirement can cure an otherwise vague statute has "become a recognized element of the lore of vagueness." Amsterdam, "The Void-for-Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.Rev. 67, 87, n. 98 (1960).

> Yet it is evident that * * * the "scienter" meant must be some other kind of scienter than that traditionally known to the common law—the knowing performance of an act with intent to bring about that thing, whatever it is, which the statute proscribes, knowledge of the fact that it is so proscribed being immaterial. Such scienter would clarify nothing; a clarificatory "scienter" must envisage not only a knowing what is done but a knowing that what is done is unlawful or, at least, so "wrong" that it is probably unlawful. *Id.*

Here the scienter requirement is not simply a circular reiteration of the offense—an intent to sell, offer for sale, display, furnish, supply or give away something that may be classifiable as drug paraphernalia. Rather the scienter requirement determines what *is* classifiable as drug paraphernalia: the violator must design the item for drug use, intend it for drug use, or actually employ it for drug use. Since very few of the items a paraphernalia ordinance seeks to reach are single-purpose items, scienter is the only practical way of defining when a multi-purpose object becomes paraphernalia. So long as a violation of the ordinance cannot be made out on the basis of someone other than the violator's knowledge, or on the basis of knowledge the violator ought to have had but did not, this sort of intent will suffice to distinguish "the paper clip which holds the pages of this memorandum of opinion from an identical clip which is used to hold a marijuana cigarette." *Record Revolution No. 6, Inc. v. City of Parma, supra,* 492 F.Supp. at 1166. We note that this case is distinguishable from *Record Head Corp., supra.* The West Allis ordinance lacked even an illustrative definition of paraphernalia, and the intent requirement could only be interpreted in the circular, non-clarifying sense.

The other concern of the vagueness doctrine is that the legislature has committed itself to a comprehensible definition of an offense, rather than leaving to police or prosecutors or courts the task of defining it on an *ad hoc* basis. In *Record Head Corp., supra,* at pp. —— – ——, we identified two important interests that are served by this requirement: maintaining political accountability for legislative action, and insuring that the citizenry has enough faith in the rule of law to submit to it. There is a third consideration: the ability of an appellate court to review prosecutions under the statute in the usual fashion. Thus when a statute gives the trial court untrammeled authority to find facts, a reviewing court will use the vagueness doctrine to ignore fact-finding to that same extent, in order to guarantee the integrity of the reviewing process. Amsterdam, *op. cit.,* at 94, 104. This third factor is more commonly determinative in challenges to a statute as applied, but it is also relevant in an anticipatory challenge such as this.

---

**9.** *Hejira Corp. v. MacFarlane,* 660 F.2d 1356, 1367 (10th Cir. 1981) (construing Colorado statute that differed slightly from Model Act); *The Casbah, Inc. v. Thone,* 651 F.2d 551, 559–560 (8th Cir. 1981), certiorari denied, —— U.S. ——, 102 S.Ct. 1642, 71 L.Ed.2d 874 (construing Nebraska statute based on Model Act). See also *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 934–936 (6th Cir. 1980), vacated and remanded —— U.S. ——, 102 S.Ct. 2227, 72 L.Ed.2d 840 (scienter coupled with definition of drug paraphernalia would obviate vagueness problems, but for "designed for use" language, which is vague, overbroad, and unseverable).

**10.** "[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." —— U.S. at ——, 102 S.Ct. at 1193. Authority and the Amsterdam note discussed *infra* are cited, *id.* at ——, n. 14, 102 S.Ct. at 1193, n. 14.

Under the Model Act as enacted by the Village of Antioch, discretion in enforcement is not unconstrained. There is a non-exhaustive list of factors that "a court or other authority should consider." Some are obviously highly probative: *e.g.*, (a) statements by the person who owns or controls the object about its use; (d) the object's proximity to controlled substances; (e) the existence of drug residue on the object; (g) instructions or (h) descriptive materials furnished with the object; and (j) the manner in which the object is displayed for sale. Others can be probative, provided their possible prejudicial impact is adequately weighed under applicable evidentiary rules: *e.g.*, (b) prior convictions of the person who owns or controls an object under federal or state drug laws; and (c) the proximity of the object, in time and space, to a direct violation of the drug paraphernalia ordinance. Others are less probative, but still relevant: *e.g.*, (*l*) direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business; and (m) the existence and scope of legitimate uses for the object in the community. Only two factors duplicate any of the five we found inadequate in *Record Head Corp., supra,* at ———————: (i) national or local advertising concerning use; and (n) expert testimony as to use.

Most of these factors are specific and relevant. They constitute effective directions of enforcement activities, and they limit the possibilities of arbitrary enforcement. Furthermore, they direct attention to objective determinations the predicates for which are likely to be susceptible to appropriate re-evaluation: the prosecutor can assess the arresting officer's case, the trial court can put the prosecutor to his proof, and the reviewing court can examine the trial court's findings.

■ To the extent that all the factors are not equally relevant and specific, however, the chance that the weaker ones will be relied on is too remote to sustain a facial vagueness attack. Again this case is distinguishable from *Record Head Corp., supra.* There all the factors were weak, and the danger of standardless enforcement was accordingly uncurtailed.

### B. The Strict Liability Issue

In their main brief on appeal the Levas brothers argue that the Antioch ordinance impermissibly made wholly innocent objects *per se* illegal when it listed them as examples of drug paraphernalia. Br. 14–15.[11] As explained in IV.A *supra,* the scienter requirement is critical to the definition of drug paraphernalia, and it carries over as well to the illustrative examples in the definitional section. In their reply brief, however, the Levases have refined their argument, concentrating on the ordinance's ban on cocaine spoons and marijuana or hashish pipes (Reply Br. 4–8).[12]

Their complaint is not primarily that they or the authorities cannot tell what these items are.[13] The definitions are cast in terms of objective features—*i.e.*, bowls so small as to indicate that the primary use is as a cocaine spoon rather than an ordinary spoon or as a marijuana or hashish pipe rather than an ordinary pipe. We cannot see how the definitions could be more specific, and the remote possibility that they

---

11. They also refer to a letter, sent to the Levases by the village attorney, indicating that some of their inventory fell under the rubric drug paraphernalia. Br. 12; App. Exhibit B. They claim that the letter shows the village's plan to enforce the ordinance without regard to intent, but we think the inference is not a fair one. The Levases had asked for advice about what might be covered, and the village responded. Its letter is neither a prosecutorial decision nor an adjudication.

12. This is apparently a due process objection. Initially the appellants had talked of the criminalization of wholly innocent conduct, in violation of the Eighth Amendment. Cocaine spoons and marijuana or hashish pipes are not "wholly innocent" items.

13. Appellants do cite a number of pre-*Hoffman Estates* district court cases to show that these or similar definitions are facially vague (Reply Br. 6–7). We might well have disagreed with those cases as an original matter; *Hoffman Estates* suggests that such definitions are only marginally uncertain, not vague in the strong sense.

could apply to an antique salt spoon or a woman's pipe does not require a finding of vagueness. As the Supreme Court has indicated, it is an adequate safeguard that a prosecution for selling a salt spoon can be defended on statutory or constitutional grounds. *Hoffman Estates, supra,* ——— U.S. at ———, n. 9, 102 S.Ct. at 1192, n. 9; ———, n. 21, 102 S.Ct. at 1196, n. 21.

Appellants' objection is rather that the statute makes cocaine spoons and marijuana or hashish pipes *per se* illegal. As a matter of statutory construction, appellants are correct. The intent requirement, as we have seen, finds its way into the offense section only indirectly because it is contained in the drug paraphernalia definition. No comparable intent requirement recurs in the cocaine spoon and marijuana or hashish pipe definitions [14]—surely because the drafters thought these items were basically single-purpose implements and did not present the problem Judge Manos illustrated with his paper clip analogy in *City of Parma, supra.*

█ The difficulty is that even if appellants are right, their argument will not support a facial challenge to the Antioch ordinance. In the first place, making the sale of cocaine spoons or marijuana or hashish pipes *per se* illegal may well not offend the Constitution. The Supreme Court "has never articulated a constitutional doctrine of *mens rea*," *Powell v. Texas,* 392 U.S. 514, 535, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254. See also Packer, "*Mens Rea* and the Supreme Court," 1962 Sup.Ct.Rev. 107. In the absence of such a doctrine, it is generally assumed that criminal legislation can dispense with *mens rea* if (a) the conduct at which the prohibition is aimed lies squarely within the state's traditional police powers; (b) there is a legislative determination that the conduct must be drastically curbed; (c) the relevant intent is hard to prove; and (d) the sanctions imposed are, as here, relatively mild. W. LaFave and A. Scott, *Handbook on the Criminal Law* § 31 at 218–222 (1972). Even the Model Penal Code, which generally disapproves of strict liability crimes, would permit them for "offenses which constitute violations," *i.e.,* for offenses punishable only by fine, forfeiture, or other civil penalty.[15] The Antioch ordinance's *per se* provisions seem to fit both the traditional and the reform criteria. At most, there is an outside chance that the provisions might be found to violate the Due Process Clause.

█ Moreover, we have found no case in which the potential unconstitutionality of a strict liability offense has been successfully urged in a facial challenge. All the Supreme Court cases in which the issue has been raised have been as-applied cases: see, *e.g., United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356; *Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254; *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758; *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205; *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228; *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88

---

**14.** The definitions in the ordinance are:

"Cocaine spoon": A spoon with a bowl so small that the primary use for which it is reasonably adapted or designed is to hold or administer cocaine, and which is so small as to be unsuited for the typical, lawful uses of a spoon. A cocaine spoon may or may not be merchandised on a chain and may or may not be labeled as a "cocaine" spoon or "coke" spoon.

"Marijuana or hashish pipe": A pipe characterized by a bowl which is so small that the primary use for which it is reasonably adapted or designed is the smoking of marijuana or hashish, rather than lawful smoking tobac-co, and which may or may not be equipped with a screen.

**15.** Model Penal Code § 2.05(1)(a) (Tent. Draft No. 4, 1955). In the comments to that Section, the draftsmen write, "This section makes a frontal attack on absolute or strict liability in penal law, whenever the offense carries a possibility of sentence of imprisonment. * * * Crime does and should mean condemnation and no court should have to pass that judgment unless it can declare that the defendant's act was wrong. This is too fundamental to be compromised. The law goes far enough if it permits the imposition of a monetary penalty in cases where strict liability has been imposed."

L.Ed. 48; *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604; *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 30 S.Ct. 668, 54 L.Ed. 930. This phenomenon can hardly be accidental. One reason for it may be that courts, when they are confronted with apparent strict liability crimes, often examine legislative history, judicial construction, and patterns of enforcement to see whether an intent element can fairly be read into the statute. LaFave and Scott, *op. cit.*, § 31 at 219. That inquiry is best postponed until the issues are presented in the more concrete circumstances of an as-applied challenge.

## V

We hold that the Antioch drug paraphernalia ordinance, construed (1) to preclude convictions based on transferred intent, (2) to require knowledge rather than negligent ignorance, and (3) to permit strict liability enforcement only in limited circumstances, is not unconstitutional on its face. We intimate no views about constitutional issues that may arise in the context of particular attempts to enforce the ordinance.

The judgment of the district court is affirmed.[16] Costs to appellees.

PELL, Circuit Judge, concurring.

I concur in the result reached in the foregoing opinion.

## APPENDIX

AN ORDINANCE AMENDING CHAPTER 130, GENERAL OFFENSES, OF THE CODE OF ORDINANCES OF THE VILLAGE OF ANTIOCH

BE IT ORDAINED BY THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF ANTIOCH, ILLINOIS, as follows:

SECTION 1: That Chapter 130, entitled, "General Offenses", of the Code of Ordinances of the Village of Antioch, Illinois, is amended by adding thereto the following sections:

(A) *Short Title and Citation.* This Ordinance shall be known and may be cited as the Paraphernalia Ordinance of the Village of Antioch.

(B) *Definitions.* The following words and phrases when used in this Ordinance shall, for the purposes of this Ordinance, have the meanings respectively ascribed to them in this Section, except where the context clearly indicates a different meaning:

(1) "Cocaine spoon": A spoon with a bowl so small that the primary use for which it is reasonably adapted or designed is to hold or administer cocaine, and which is so small as to be unsuited for the typical, lawful uses of a spoon. A cocaine spoon may or may not be merchandised on a chain and may or may not be labeled as a "cocaine" spoon or "coke" spoon.

(2) "Controlled Substance": Any drug, substance or immediate precursor enumerated in Schedules 1–5, Chapter 56½, PA 79–454 of the Illinois Revised Stat[ut]es, as amended (commonly known as the Controlled Substances Act).

(3) "Cannabis": As defined in Section 703 of Chapter 56½, PA 79–1465 of the Illinois Revised Statutes, as amended.

(4) "Marijuana or hashish pipe": A pipe characterized by a bowl which is so small that the primary use for which it is reasonably adapted or designed is the smoking of marijuana or hashish, rather than lawful smoking tobacco, and which may or may not be equipped with a screen.

(5) The term "Drug Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting,

---

**16.** Since the parties have not raised questions of abstention or standing, neither issue is discussed in this opinion.

inhaling, or otherwise introducing into the human body a controlled substance as defined in Schedules 1–5, Chapter 56½, PA 79–454 of the Illinois Revised Statutes, as amended or cannabis as defined in Section 703 of Chapter 56½, PA 79–1465 of the Illinois Revised Statutes, as amended. It includes, but is not limited to:

(a) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or cannabis or from which a controlled substance or cannabis can be derived.

(b) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substance[s] or cannabis;

(c) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance or cannabis;

(d) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness or purity of controlled substances or cannabis;

(e) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances or cannabis;

(f) Diluents and adulterants, such as quinine hydrochloride, manitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances or cannabis;

(g) Separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining marijuana;

(h) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances or cannabis;

(i) Capsules, ball[o]ons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances or cannabis;

(j) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances or cannabis;

(k) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:

(1) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) Water pipes;

(3) Carburetion tubes and devices;

(4) Smoking and carburetion masks;

(5) Roach clips: meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(6) Chamber pipes;

(7) Carburetor pipes;

(8) Electric pipes;

(9) Air-driven pipes;

(10) Chillums;

(11) Bongs;

(12) Ice pipes or chillers;

In determining whether an object is Drug paraphernalia, a court or other authority should consider in addition to all other logically relevant factors, the following:

(a) Statements by an owner or by anyone in control of the object concerning its use;

(b) Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

(c) The proximity of the object, in time and space, to a direct violation of this Act;

(d) The proximity of the object to controlled substances;

(e) The existence of any residue of controlled substances on the object;

(f) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know,

intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act shall not prevent a finding that the object is intended for use, or designed for use as Drug paraphernalia;

(g) Instructions, oral or written, provided with the object concerning its use;

(h) Descriptive materials accompanying the object which explain or depict its use;

(i) National and local advertising concerning its use;

(j) The manner in which the object is displayed for sale;

(k) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the co[m]munity, such as a licensed distributor or dealer of tobacco products;

(*l*) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

(m) The existence and scope of legitimate uses for the object in the community;

(n) Expert testimony concerning its "use."

(6) "Person": An individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association.

(C) It shall be unlawful for any person to sell, offer for sale, display, furnish, supply or give away any cocaine spoon, marijuana pipe, hashish pipe, or any drug paraphernalia.

The prohibition contained in this section shall not apply to manufacturers, wholesalers, jobbers, licensed medical technicians, technologists, nurses, hospitals, research teaching institutions, clinical laboratories, medical doctors, osteopathic physicians, dentists, chiropodists, veterinarians, pharmacists, or embalmers in the normal lawful course of their respective businesses or professions, nor to common carriers or warehousers or their employees engaged in the lawful transportation of such paraphernalia, nor to public officers or employees while engaged in the performance of their official duties, nor to persons suffering from diabetes, asthma, or any other medical condition requiring self injection.

(D) *Penalties.* A person who violates any provision or provisions of this Ordinance, upon conviction, shall be punished with a fine not exceeding Five Hundred ($500.00) Dollars and not less than Twenty Five ($25.00) Dollars. Each day of the violation shall be considered a separate offense.

(E) *Construction; Severability.* It is the legislative intent that all provisions and sections, clauses and sentences of the Ordinance be liberally construed, and should any provision, section, clause or sentence be held unconstitutional or invalid, such holding shall not be construed as affecting the validity of any of the remaining provisions, sections, clauses, or sentences, it being the intent that this Ordinance shall stand notwithstanding of the validity of any provision, section, clause or sentence.

SECTION 2: All Ordinances or parts of Ordinances in conflict herewith are expressly repealed.

SECTION 3: This Ordinance shall be in full force and effect after its passage, approval and publication in pamphlet form.