UNITED STATES

v.

**Sergeant Michael R. HESTER, FR 309–62–3647, United States Air Force.**

**ACM 24193.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 2 Sept. 1983.

Decided 2 April 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Kevin L. Daugherty.

Before KASTL, CANELLOS and RAICHLE, Appellate Military Judges.

DECISION

KASTL, Senior Judge:

Are a bong smoking device and a hemostat—neither of which contains marijuana residue—"drug abuse paraphernalia" which are banned under the governing Air Force directive? On the limited facts of this case, we affirm as to the bong but reverse as to the hemostat.[1]

A bong is a metal pipe with a bowl so small that its reasonable use is for marijua-

---

1. The accused was convicted of conspiracy, larceny, wrongful entry, wrongful disposition of government property, use and possession of marijuana, and possession of drug paraphernalia, violations of Articles 81, 121, 130, 108, 134, and 92, U.C.M.J., 10 U.S.C. §§ 881, 892, 908, 921, 930, 934. His sentence, as approved, extends to a dishonorable discharge, confinement at hard labor for five years, total forfeitures, and reduction to airman basic.

na rather than lawful smoking tobacco. The bong in question appears commercially made; it was found on base in the closet of the accused's master bedroom. The hemostat was discovered in his spare bedroom, where marijuana was also discovered. Neither the bong nor the hemostat revealed marijuana residue after scientific testing.

Air Force Regulation 30–2, Social Actions Program, para. 3–3c(12) (22 June 1981) prohibits possessing drug abuse paraphernalia, which is defined as anything "used, intended to be used, or designed to be used" in an impermissible manner. The Air Force regulation is typical of many drug paraphernalia laws recently passed by civilian authorities.

### Drug Paraphernalia Statutes

To evaluate this matter, it is useful to review the recent and rapid rise of those American drug paraphernalia laws.

Sales of drug paraphernalia in the "headshop" industry have been estimated at $3 billion annually. *See* Note, *Death of a Headshop: Texas' New Drug Paraphernalia Act,* 34 Baylor L.Rev. 247 (1982). Generally speaking the drug paraphernalia laws provide a new approach, since earlier efforts focused on outlawing each drug itself.[2] Seeking to create unassailable anti-paraphernalia guidance, the Justice Department's Drug Enforcement Administration formulated a Model Drug Paraphernalia Act. *See generally* Note, *Village of Hoffman Estates, Flipside, Hoffman, Estates, Inc.,* 60 J.Urb.L. 338 (Winter 1983). At least 25 states have adopted legislation paralleling the Model Act. *See Stoianoff v. Montana,* 695 F.2d 1214, 1217 (9th Cir. 1983). Still other authorities have enacted statutes not grounded on the Model Act. *See Mid-Atlantic Accessories Trade v. Maryland,* 500 F.Supp. 834, 842 (D.Md. 1980). To avoid difficulties of vagueness, the Model Act establishes 14 guidelines to help identify drug paraphernalia. Included

are such matters as the proximity of the object to controlled substances, existence of any residue on the object, and expert testimony concerning its use. After some uncertainty, at least nine circuits have upheld statutes based on the Model Act. *See Opinion of the Justices,* 121 N.H. 542, 544, 431 A.2d 152, 154 (1981); *see also Pa. Accessories Trade Ass'n Inc. v. Thornburgh,* 565 F.Supp. 1568, 1571 and n. 4 (M.D.Pa. 1983). In only one circuit has a drug paraphernalia law based on the Model Act been held unconstitutional, and that case is not yet fully resolved. *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 937 (6th Cir.1980), *vacated and remanded,* 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982).

Answering strenuous claims that the Model Act and its progeny were both overbroad and void for vagueness, the United States Supreme Court upheld such an ordinance in *Village of Hoffman Estates v. Flipside, Hoffman, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (hereinafter *Flipside* ).

Typically, statutes ban paraphernalia that is used, intended to be used, or *designed to be used* in an illegal manner. A problem arises when alleged paraphernalia is described by the latter phrase; virtually every court analyzing this phrase has recognized that "designed for use" challenges jurists and legislators to accurately define and employ the term. *See for example, Record Revolution No. 6, Inc. v. City of Parma, supra,* at 930. *See also Tobacco Accessories, etc. v. Treen,* 681 F.2d 378, 384 (5th Cir.1982); *Florida Businessmen, etc. v. City of Hollywood,* 673 F.2d 1213, 1218 (11th Cir.1982) (good analysis of precedents); *see generally* Johnson, *The Constitutionality of Drug Paraphernalia Laws,* 81 Col.L.Rev. 581, 599 (1981). *Flipside* clearly aligns the Supreme Court behind the view that "designed for use" can provide a permissible, enforceable stan-

---

**2.** California was the first state to outlaw drug abuse paraphernalia; its prototype law banning opium pipes was enacted in 1939. Five states had outlawed possession of paraphernalia prior to 1975. *See* Johnson, *The Constitutionality of Drug Paraphernalia Laws,* 81 Col.L.Rev. 581 (1981).

dard. *See Flipside, supra,* 455 U.S. at 500, 102 S.Ct. at 1195, 71 L.Ed.2d at 373.

### Military Application

With this short excursion in mind, we return to the instant case and military application. Air Force Regulation 30–2 appears cast substantially along the lines of the Model Act. As stated above, it defines drug abuse paraphernalia as anything "used, intended to be used, or designed to be used" in an illegal manner. Like their civilian counterparts, the military courts have responded to attacks on the service regulations and upheld convictions. *See, e.g., United States v. Bradley,* 15 M.J. 843 (A.F.C.M.R.1983); *United States v. Cannon,* 13 M.J. 777 (A.C.M.R.1982). *See also United States v. Austin,* 13 M.J. 759, 760 n. 1. (A.F.C.M.R.1982). *See generally United States v. Tee,* 20 U.S.C.M.A. 406, 43 C.M.R. 246 (1971).

■ Evaluating the evidence of record within the *Flipside* guidelines and military precedents, we sustain a finding of guilty as to the bong. True enough, no marijuana residue was discovered on the bong. However, this is merely one of many circumstances to weigh. *See generally United States v. Austin, supra,* at 760 n. 1.

One extremely significant factor is that a bong is basically a single purpose implement. *See Levas and Levas v. Village of Antioch,* 684 F.2d 446, 453 and 455 (7th Cir.1982). We find *Levas* a searching, finely-tuned decision which helpfully contrasts such items with multi-purpose ones—such as a paper clip device which can be used for either a laudable reason (holding the pages of this opinion, for example) or an illegal one (using the identical clip to hold a marijuana cigarette). *See generally Record Revolution No. 6, Inc. v. City of Parma, supra,* at 932. In the case of the bong there is no other legitimate purpose for having it except to smoke marijuana.

We have weighed the other evidence of record supporting guilt as to this matter and find it clearly sufficient. For example, the accused also has been convicted during

this court-martial of the offense of using marijuana on or about the same day he possessed the bong; the bong was proximately related, in both time and space, to that offense; some testimony at trial indicated there was no other use to which a bong might be put; and the marijuana was located in the selfsame house occupied by the accused. In sum, weighing these matters along with the telling fact that a bong has no other legitimate purpose, we are convinced the accused is guilty of a violation of A.F.R. 30–2.

■ Contrariwise, we are unconvinced on these facts that the accused is guilty of illegally possessing the hemostat.[3] Here no showing exists that the accused used or intended to use the hemostat illegally. Concededly, if drug residue had been found on it, there would be circumstantial evidence of actual or intended use; yet there was none. *See United States v. Cannon, supra,* at 778. Hence, we must consider the prosecution's claim that this hemostat was drug abuse paraphernalia "designed to be used" for smoking marijuana. Such a thesis presents serious difficulties; the evidence shows, at best, an object *capable* of being used to smoke marijuana. Moreover, it is unclear from our reading of the record whether the object was found hidden together with the marijuana. *See United States v. Bradley, supra,* at 845. We are not blind to the fact that the accused probably never intended the hemostat as makeshift stamp tongs to aid in displaying a stamp collection. Nonetheless, possession of a hemostat is not *per se* criminal. Therefore, since the hemostat is multi-purpose, there was no residue on it and it was not palpably found with marijuana immediately nearby, we are disinclined to affirm a finding of guilty of possession of drug paraphernalia as to this object.

The problem with the overly-wide reading advanced by the Government as to this item is that it reaches too far without any handholds or logical standards to separate criminals from law-abiding citizens. Indeed, if potential illegal application is

---

**3.** The individual defense counsel objected to introduction of the hemostat into evidence; as for the "bong," he made an initial protest but later had no objection to its admission.

enough, then anyone possessing razor blades, a woman's smoking pipe, aluminum foil, a crisp new bill, or a small sugar spoon can also be found liable. *See generally Levas and Levas, supra,* at 455. To summarize, we find insufficient evidence upon which to convict as to the hemostat.

We remind practitioners of what we have said twice before—that restraint must be exercised in determining the objects and circumstances warranting charges involving drug abuse paraphernalia. *See United States v. Bradley, supra,* at 845 n. \*; and *United States v. Austin, supra,* at 760 n. 1.

Accordingly, while we affirm the findings of guilty of possessing drug abuse paraphernalia (the specification of Charge V) as a violation of Article 92, U.C.M.J., we find that only the bong smoking device—not the hemostat—is encompassed in such findings of guilty.

We now reassess the sentence. Taking note of the myriad offenses of which this accused was convicted, we find the sentence nevertheless appropriate.

The findings of guilty as modified, and the sentence are

AFFIRMED.

Judges CANELLOS and RAICHLE concur.